IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.    13-cv-02855-MJW

RICHARD A. URIOSTE,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Richard Urioste is not disabled for purposes of

Social Security Disability Insurance and Supplemental Security Income.  Urioste has

asked this Court either to reverse that decision or to remand for further hearing.

The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Both

parties have agreed to have this case decided by a U.S. Magistrate Judge under 28

U.S.C. § 636(c).  The Court AFFIRMS the government's determination.

## Factual Background

Urioste used to work as a tile-layer, for a business he ran with his brother.  He

has also worked in an injection-molding factory, operating vacuum formers.  He has a

thyroid issue that began around 2004; his more recent thyroid-related medical records

suggest that he might have Graves' disease or perhaps tumors on his thyroid.  Urioste

was also in a severe car accident in 2007.  The accident damaged his shoulder and

back, and he says it also caused migraines and memory problems.  He told the Social

2

Security Administration that he hasn't worked since, but he told his doctors something else.

In denying Urioste's claim for disability benefits, the Administrative Law Judge ("ALJ") relied on Urioste's lack of credibility and on medical records indicating little in the way of functional limitations.  More formally, the ALJ applied the Social Security Administration's five-step process for resolving claims.  *See* 20 C.F.R. § 404.1520(a)(4).  At step 2, concluding that Urioste's conditions imposed more than a minimal effect on his ability to work, the ALJ found:

> The claimant has the following severe impairments: right shoulder impingement versus rotator cuff pathology; ganglion cyst of the right hand; Graves' disease; depressive disorder; and anxiety.

(AR 24.)  Before step 4, evaluating Urioste's ability to work, the ALJ found:

> [T]he claimant has the residual functional capacity ["RFC"] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift and carry [only] 50 pounds occasionally and 25 pounds frequently; occasionally reach with the dominant right upper extremity; use the right upper extremity for assist when lifting and carrying; and frequently handle and finger with the right upper extremity.  Mentally, the claimant can understand, remember, and carry out simple instructions.

(AR 27.)  Although this limited functional capacity ruled out Urioste's past work as a tile-layer and injection-molding operator, the ALJ concluded that there are other jobs available to a person with those limitations.  Therefore, the ALJ found, Urioste is not disabled within the meaning of the Social Security Act.

## **Analysis**

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were

3

applied.  *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).  "Substantial

evidence is such evidence as a reasonable mind might accept as adequate to support a

conclusion.  It requires more than a scintilla, but less than a preponderance."  *Raymond*

*v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted).

The Court "should, indeed must, exercise common sense" and "cannot insist on

technical perfection."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility.  *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007).

Urioste argues that the ALJ: (1) failed to develop the record regarding functional

limitations attributable to Urioste's Graves' Disease; (2) failed to address all the

functional limitations imposed by Urioste's mental impairments; (3) failed to attribute

Urioste's lack of medical care to his inability to pay (instead of taking it as a sign of non-

credibility); and (4) failed to base his vocational analysis on sufficient evidence.

**I.    Duty to Develop the Record**

The ALJ found Urioste's Graves' Disease to be a severe limitation at Step 2—

meaning that it had more than a minimal effect on Urioste's ability to perform work—but

did not specifically discuss Graves' Disease, or thyroid problems more generally, in the

RFC analysis.  There is little to no evidence that Urioste's thyroid problems actually do

limit his capacity to work—and Urioste therefore argues that the ALJ failed to develop

the record on the question.

"In a social security disability case, the claimant bears the burden to prove her

disability."  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (internal quotation

4

marks omitted).  But because "administrative disability hearings are nonadversarial . . . the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Id.*  "This duty is not a panacea for claimants . . . which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning."  *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994).  "'The standard' for determining whether the ALJ fully developed the record 'is one of reasonable good judgment.'"  *Segura v. Barnhart*, 148 F. App'x 707, 710 (10th Cir. 2005) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).  If there is sufficient information to make a disability determination, the record is sufficiently developed.  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

The ALJ sufficiently developed the record here.  He reviewed three years' worth of medical records.  Although the records related primarily to treatment for Urioste's car accident, they all noted, and to some degree discussed, Urioste's thyroid problems. (*See* AR 255–349.)  A state agency consultant, Dr. Adam Summerlin, examined Urioste and diagnosed Graves' Disease—but in assessing Urioste's functional limitations, determined no impairments attributable to thyroid problems.  (AR 350–56.)  And the ALJ reviewed then-current thyroid-related medical records, none of which suggest any functional limitations.  (AR 370–73.)  This is enough information to make a disability determination.  Therefore, the record is sufficiently developed.

Urioste's argument the ALJ should have developed more evidence fails for two additional reasons.  First, Urioste does not identify what additional records the ALJ should have sought.  *See, e.g.*, *Watson v. Barnhart*, 194 F. App'x 526, 530 (10th Cir.

5

2006) ("Watson neither (1) suggests what the omitted treatment evidence might reveal; nor (2) identifies anything in the record that would have reasonably notified the ALJ that such evidence existed."); *Jaramillo v. Massanari*, 21 F. App'x 792, 795 (10th Cir. 2001) ("She has not identified medical providers from whom records were missing nor did she ask assistance in obtaining any records.  On appeal, she has failed to identify the evidence she claims the ALJ should have obtained. The ALJ did not violate the duty to develop the record.").  Here, Urioste does not suggest that other medical records existed that might have been gathered; Urioste does not suggest that other witnesses could have been called to testify; Urioste does not contend that a consultative examination should have been ordered.  In short, Urioste fails to explain what else the ALJ should have done.  Moreover, although duty to develop the record exists even where the claimant is represented by counsel, *Wall*, 561 F.3d at 1063, it "does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation."  *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).  The ALJ specifically asked Urioste's attorney, at the beginning of the hearing, whether the documentary record was sufficient.  Urioste's attorney said that it was.  (AR 36.)

Second, as noted, Urioste did not present any evidence of thyroid-related functional impairments.  Without *some* evidence of a functional limitation from a condition, especially in a case where the claimant is represented by counsel, the ALJ has no duty to further develop the record as to that condition.  *See Hawkins v. Chater*, 113 F.3d 1162, 1167–68 (10th Cir. 1997); *see also Rutledge v. Apfel*, 230 F.3d 1172,

6

1175 (10th Cir. 2000) (no duty to develop record further as to certain exertional factors where objective evidence did not suggest any impairment to those functions). Further, Urioste did not claim to have any such limitations. The ALJ's duty is to develop those issues actually presented by the claimant. *Wall*, 561 F.3d at 1062–63. Here, Urioste did not suggest that he had any thyroid-related functional impairment on his application forms, in his discussions with his doctors and the consultants, or at any point in his hearing testimony. Thus, the ALJ did not err by failing to develop the matter further.

In sum, the ALJ's physical RFC is supported by substantial evidence, and there was no obligation for the ALJ to develop the record further as to Urioste's thyroid issues.

## II. Mild & Moderate Mental Limitations

During the ALJ's discussion at Step 3 (determining whether Urioste's impairments met or medically equaled certain "listed" impairments that automatically qualify a claimant as disabled), the ALJ found that Urioste suffered from mild social impairments and moderate difficulty with concentration, persistence, and pace. (AR 26.) The ALJ left those mild social limitations out of the RFC analysis. (AR 27–31.) Urioste argues that this omission was legal error, because the RFC must evaluate the impact of all limitations, even those that are not severe. *See* 42 U.S.C. § 423(d)(2)(C).

Urioste's argument is foreclosed by *Beasley v. Colvin*, 520 F. App'x 748 (10th Cir. 2013). The claimant there made an identical argument, and the Tenth Circuit rejected it:

> Ms. Beasley asserts that since the ALJ found she had moderate limitations in social functioning in . . . determining whether she met a listing at step three, the ALJ necessarily had to find [RFC] limitations related to social functioning. We disagree.

7

When evaluating a mental impairment at step three, the ALJ utilizes the psychiatric-review technique described in 20 C.F.R. § 404.1520a, which "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' criteria . . . of the adult mental disorders listings."  . . . The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."

Once an impairment is determined to be severe, it must be reflected in the RFC.  Here, the ALJ did include restrictions based on Ms. Beasley's severe mental impairment, limiting her to performing "simple, routine, and repetitive tasks."  But the ALJ's finding of "moderate difficulties" in social functioning in the "paragraph B" criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.  The RFC is defined as "the most [a claimant] can still do despite [his or her] limitations."  In this case, the ALJ found that, in spite of any limitations in social functioning, Ms. Beasley could "respond appropriately to supervision, co-workers, the general public, and usual work situations."  The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had "moderate difficulties" in social functioning as part of the distinct step-three analysis.

*Beasley*, 520 F. App'x at 754 (internal citations omitted).  Here, like there, the ALJ made

a finding at step 3 that the claimant had social impairments—but then found, at step 4,

that the claimant nonetheless had no functional limitations resulting from those

impairments.  Here, like there, the apparent contradiction is not erroneous because the

two analyses are distinct and serve different purposes.

To be sure, if uncontradicted medical evidence suggests a limitation, the ALJ errs

by failing to discuss that evidence.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.

2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical

opinion, taking only the parts that are favorable to a finding of nondisability."); *see also*

8

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[T]he ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").  But Urioste does not point to any evidence that the ALJ ignored.  Rather, Urioste contends that the ALJ's own findings, from a different analytical question, are binding.  This, too, has been rejected by the Tenth Circuit. *DeFalco-Miller v. Colvin*, 520 F. App'x 741, 748 & n.5 (10th Cir. 2013) ("But the ALJ's statement at step three . . . is neither a medical fact nor nonmedical evidence.  And Ms. DeFalco-Miller does not argue that the record evidence, rather than the ALJ's step three statement, compels the inclusion of a moderate social-functioning limitation in the RFC.").  Accordingly, the ALJ committed no reversible error by failing to find an RFC limitation mirroring his step 3 findings.

## III.   Credibility Determination

The ALJ deemed Urioste's testimony to be non-credible on a number of topics— the extent to which he worked, the existence of debilitating migraines, episodes of fainting, the severity of his back and shoulder problems, and so on.  Repeatedly, the ALJ noted that Urioste's lack of medical treatment undermined his credibility.  Urioste argues that this factor should not have been taken into consideration, because the lack of treatment was caused by his inability to pay for such treatment.

The government has promulgated a formal Social Security Ruling setting forth its process for evaluating credibility.  It provides:

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.  However, the

> adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . For example . . . [t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services.

*Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P, 1996 WL 374186, at * 7–8 (July 2, 1996).  An inability to pay must be taken into consideration if there is evidence a claimant sought to obtain any low-cost medical treatment or that he has been denied medical care because of his financial condition.  *Atkinson v. Astrue*, 389 F. App'x 804, 809 (10th Cir. 2010) (citing *Murphy v. Sullivan*, 953 F.2d 383, 386–87 (8th Cir. 1992), and *Threet v. Barnhart*, 353 F.3d 1185, 1191 n. 7 (10th Cir. 2003)); *see also Cook v. Apfel*, 189 F.3d 477 (10th Cir. 1999).  If an ALJ fails to make this inquiry, the lack of medical treatment cannot constitute "substantial evidence" to support the ALJ's credibility determination.  *See Madron v. Astrue*, 311 F. App'x 170, 178–79 (10th Cir. 2009).

Urioste's argument fails for two reasons.  First, there is other substantial evidence to support the ALJ's credibility determination.  The ALJ noted that, when Urioste was actually receiving treatment, the treatment involved no medication.  (AR 28.)  The ALJ noted that Urioste told his treating chiropractor on a number of occasions that he was working—"despite his impairments, within 12 months of his onset date, and at a level reported to be greater than 40 hours a week." (*Id.*)  The ALJ further noted "the clinical findings are relatively minimal when compared to the claimant's severe subjective complaints." (*Id.*)  Finally, the ALJ noted that Urioste's testimony was "rather

10

unforthcoming" when asked about the working-long-hours statements.  (*Id.*)  In a three-paragraph recitation of the reasons for his credibility determination, the ALJ mentions "the absence of medical treatment since 2009" once, using a total of seven words.  The ALJ came back to the point in a number of other places in the opinion—but even if the ALJ should not have done so, the ALJ's credibility determination is nonetheless supported by substantial evidence.

Second, there is no indication in the record that Urioste failed to get any relevant treatment due to financial limitations.  *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1168 (10th Cir. 2012) ("The ALJ's ignoring the tribal blood work was not reversible error, because the treatment did not relate to her complaint of disabling pain, which is the issue here.").  As Urioste correctly points out, the more recent medical records suggest that he was struggling to afford his thyroid treatment.  (*E.g.*, AR 371.)  But that problem was apparently resolved by the time of the hearing.  (*See* AR 43 (testifying that he had just picked up his medication and would begin radiation treatment shortly)).  Further, at no point until briefing in this Court has Urioste maintained that his thyroid problems cause any functional limitations, and as discussed above, there is no medical evidence to support that contention.  Urioste's claim for disability benefits is predicated on the injuries from his car accident—and the record indicates that his treatment for those injuries stopped in 2009 because his injuries no longer required treatment, not because he could no longer afford it.  (AR 295–99.)

11

The ALJ's credibility analysis is supported by substantial evidence—and to the extent the ALJ took into account Urioste's failure to seek medical treatment, any error is harmless, as it did not concern the disabling conditions at issue in this case.

## IV.   Vocational Analysis

The ALJ's step 5 vocational analysis acknowledged that the opinion of the vocational expert who testified at the hearing did not entirely comport with the *Dictionary of Titles* ("DOT"), which the government normally relies on to establish the existence of jobs that a claimant could perform.  Urioste contends that this discrepancy left the record devoid of evidence of the number of jobs available to a person like him.

"'[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the [] requirement[s] of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir. 2005) (quoting *Haddock v. Apfel,* 196 F.3d 1084, 1087 (10th Cir.1999)); *see also Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions*, SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).  Here, the vocational expert testified that a person with limitations like Urioste's could find work as a counter clerk, a call-out operator, or a surveillance-system monitor.  (AR 32.)  The DOT descriptions for those jobs, however, do not distinguish between lifting ability in general and lifting ability when one arm is particularly limited, like Urioste's right arm.  *(See* AR 59.)  The ALJ specifically followed up on the point, confirming that someone with

12

Urioste's limitations could perform the jobs at issue, despite the DOT's lack of information on the topic. (*Id.*)  The expert testified in the affirmative, basing her opinion on her expertise and her personal observation of such jobs being performed. (*Id.*)

This satisfies the ALJ's duty of inquiry.  But it is not the duty to resolve such discrepancies, specifically, that Urioste challenges.  Rather, Urioste argues that the right-arm limitation erodes the number of jobs available in the identified categories—and since there was no evidence of how much erosion is appropriate, there was no evidence to support the ALJ's ruling.  As the government points out, Urioste misstates the expert's testimony.  The expert did not testify that *some* of the jobs in the identified categories could be performed by a person like Urioste.  Rather, she testified that the categories themselves are jobs that a person like Urisote could do.  Stated differently: the expert testified that the numbers provided by the DOT should *not* be reduced to reflect limitations on the use of one arm.  Accordingly, her testimony as to the number of jobs available to a person with Urioste's limitations is on point, and that testimony meets the government's burden of proof at step 5.

## Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED. The Clerk is directed to close this case and enter judgment for Defendant.  Each party shall pay their own costs and attorney's fees.

Dated this 28th day of October, 2014.

BY THE COURT:
/s/ Michael J. Watanabe
MICHAEL J. WATANABE
United States Magistrate Judge